**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**


| | | |
|---|---|---|
| GOLDEN HOUR DATA SYSTEMS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:06-CV-381 TJW |
| | § | |
| emsCHARTS, INC. and SOFTTECH, LLC, | § | |
| | § | |
| Defendants. | § | |


**DEFENDANT EMSCHARTS, INC.'S MOTION FOR JUDGMENT
AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL
ON THE ISSUES OF INFRINGEMENT AND WILLFULNESS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARDS ..........................................................................................1

    A.    Standard for Judgment as a Matter of Law......................................................1

    B.    Standard for Motion for New Trial..................................................................2

III.  ARGUMENTS........................................................................................................3

    A.    There Was Insufficient Evidence Presented At Trial To Support The
          Jury's Verdict On Joint Infringement Of Claims 1, 6-8, 15, And 16-22
          Of The '073 Patent..........................................................................................3

          1.    The Law on Joint Infringement............................................................3

          2.    There Was Insufficient Evidence Presented at Trial on the Required
                  "Control or Direction" by emsCharts over Softtech, or Vice Versa, to
                  Support the Jury's Verdict on Joint Infringement of Claims 1, 6-8, 15,
                  and 16-22 of the '073 Patent..................................................................4

          3.    There Was Insufficient Evidence Presented at Trial to
                  Prove that emsCharts and Softtech Were the Direct Infringers of
                  Claims 1, 6-8, 15, and 16-22 of the '073 Patent ....................................7

    B.    Since emsCharts Has Not And Could Not Accurately Bill A Patient,
          There Is Insufficient Evidence To Support The Jury's Verdict That
          emsCharts Alone Directly Infringed Claims 10 And 12-14 Of The
          '073 Patent ......................................................................................................9

    C.    There Was Insufficient Evidence Presented At Trial Regarding
          A Direct Infringement By Another And That emsCharts Possessed The
          Requisite Specific Intent To Encourage Another's Infringement....................12

          1.    The Law of Inducement .....................................................................12

          2.    Golden Hour Failed to Provide Sufficient Evidence As To a Direct
                  Infringer ............................................................................................12

          3.    Golden Hour Failed to Prove that emsCharts Had an Affirmative
                  Intent to Induce Infringement by Another ...........................................13

D.      There Was Insufficient Evidence Presented At Trial To Satisfy The
        "Objective Recklessness" Standard Of Willfulness Established By The
        Federal Circuit In *In re Seagate* .......................................................................13

III.    CONCLUSION ...........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acco Brands, Inc. v. ABA Locks Mfg. Co., Ltd.*,
    501 F.3d 1307 (Fed. Cir. 2007)........................................................................12

*Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*,
    249 F.3d 1341 (Fed. Cir. 2001)........................................................................15

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007)..............................................................3, 4, 7, 8

*DSU Medical Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006)........................................................................12

*Emtel, Inc v. Lipidlabs, Inc.*,
    583 F. Supp. 2d 811 (S.D. Tex. 2008) ................................................3, 4, 7

*Engle v. Dinehart*,
    213 F.3d 639 (5th Cir. 2000) ........................................................................3

*Guile v. United States*,
    422 F.3d 221 (5th Cir. 2005) ........................................................................2

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008) ....................................................................15

*Johns Hopkins Univ. v. Datascope Corp.*,
    88 USPQ2d 1365 (Fed. Cir. 2008)................................................................2

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533 (Fed. Cir. 1991)......................................................................9

*Lemelson v. United States*,
    752 F.2d 1538 (Fed. Cir. 1985)......................................................................9

*Lexicon Medical, LLC v. Northgate Tech., Inc.*,
    Nos. 2007-1420 & 2007-1440, 2008 U.S. App. LEXIS 18825
    at *20-*21 (Fed. Cir. 2008) ..........................................................................17

*Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*,
    341 F.3d 415 (5th Cir. 2003) ........................................................................2

*Medtronic Vascular, Inc. v. Boston Scientific Corp.*,
No. 2:06-CV-78(TJW), Doc. No. 206 (E.D. Tx. May 21, 2008).................................15

*Minks v. Polaris Indus., Inc.*,
546 F.3d 1364 (Fed. Cir. 2008).....................................................................................15

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*,
303 F.3d 1294 (Fed. Cir. 2002).....................................................................................12

*MuniAuction, Inc. v. Thomson Corp.*,
532 F.3d 1318 (Fed. Cir. 2008)...................................................................................3, 8

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000)..........................................................................................................2

*In re Seagate*,
497 F.3d 1360 (Fed. Cir. 2007)..............................................................1, 13, 14, 15

*Smith v. Transworld Drilling Co.*,
773 F.2d 610 (5th Cir. 1985) ...................................................................................2, 13

*TGIP, Inc. v. AT&T Corp.*,
527 F. Supp.2d 561 (E.D. Tex. 2007) .........................................................................15

*Underwater Devices Inc. v. Morrison-Knudsen Co.*,
717 F.2d 1380 (Fed. Cir. 1983).....................................................................................14

*Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*,
520 U.S. 17 (1997).............................................................................................................3

*Warner-Lambert Co. v. Apotex Corp.*,
316 F.3d 1348 (Fed. Cir. 2003).....................................................................................12

## **Statutes**

Fed. R. Civ. P. 50............................................................................................................1, 2

Fed. R. Civ. P. 59............................................................................................................1, 2

## **Miscellaneous**

Restatement (Second) of Agency § 220........................................................................3

## I.      INTRODUCTION

Defendant emsCharts, Inc. ("emsCharts") hereby moves for judgment as a matter of law, under Fed. R. Civ. P. 50(a), as there is insufficient evidence for a reasonable jury to have found that Golden Hour Data Systems, Inc. ("Golden Hour") proved:

(i)      the requisite "control or direction" was exercised by emsCharts over Softtech, LLC ("Softtech"), or *vice versa*, for there to be joint infringement, and that emsCharts and Softtech were liable for directly infringing claims 1, 6-8, 15, and 16-22 of U.S. Patent No. 6,117,073 ("the '073 Patent");

(ii)     emsCharts has or could accurately bill a patient using the emsCharts.com program such that it could alone be liable for direct infringement of claims 10 and 12-14 of the '073 Patent;

(iii)    someone other than emsCharts has directly infringed claims 1, 6-8, 10, and 12-22 of the '073 Patent and emsCharts actively induced the specific acts of infringement with the requisite intent that its actions would induce actual infringement; and

(iv)    emsCharts' conduct satisfies the "objective recklessness standard of willfulness" established by the Federal Circuit in *In re Seagate*.

In the alternative, emsCharts moves, pursuant to Fed. R. Civ. P. 59(a), for a new trial on issues (i), (ii), (iii), and (iv) as the verdict on each of these issues is against the weight of the evidence.

## II.     LEGAL STANDARDS

### A.      Standard For Judgment As A Matter Of Law

The Court should grant a motion for judgment as a matter of law ("JMOL") with regard to a particular issue when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on that issue."  Fed. R. Civ. P. 50(a); *see Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000); *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005). The Court must review all of the evidence of record in deciding a motion for JMOL, "draw all reasonable inferences in favor of the non-moving party, and . . . not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150; *see also Johns Hopkins Univ. v. Datascope Corp.*, 88 USPQ2d 1365, 1367 (Fed. Cir. 2008). In the Fifth Circuit, entry of judgment as a matter of law under Rule 50(b) is appropriate if evidence supporting the movant is "uncontradicted and unimpeached [or] if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that [a] reasonable [jury] could not arrive at a contrary verdict." *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 420 (5th Cir. 2003).

**B.    Standard For Motion For New Trial**

A new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985).

## III.    ARGUMENTS

### A.    There Was Insufficient Evidence Presented At Trial To Support The Jury's Verdict On Joint Infringement Of Claims 1, 6-8, 15, And 16-22 Of The '073 Patent

#### 1.    The Law on Joint Infringement

Infringement requires a showing that a defendant has practiced each and every element of the claimed invention. *Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520 U.S. 17, 40 (1997). The "traditional standard requir[es] a single party" to practice each and every element for there to be infringement. *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007). "A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity. In those cases, the party in control would be liable for direct infringement." *BMC Resources*, 498 F.3d at 1381. Therefore, to prove infringement through the joint actions of more than one person or entity, the patent holder must prove that "one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., 'the mastermind.'" *MuniAuction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) (quoting *BMC Resources*, 498 F.3d at1380-81). In *BMC Resources*, the Federal Circuit described the type of "control or direction" that is "attributable to the controlling party," and is necessary for there to be joint infringement, as following the law of vicarious liability. 498 F.3d at 1379 (citing *Engle v. Dinehart*, 213 F.3d 639 (5th Cir. 2000) (unpublished), which in turns cites Restatement (Second) of Agency § 220 cmt. d).

Since the decision in *BMC Resources*, various district courts, including this one, have examined the requisite "control or direction." *See, e.g.*, *Emtel, Inc v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 828-40 (S.D. Tex. 2008). "These cases make clear that for liability to attach[, even when a contract is involved], the defendant must direct or control the [other defendant] in

3

its performance of the claimed steps of the patented method, such that the defendant could be vicariously liable for the [other defendant's] performance." *Id.* at 839.

The Federal Circuit has specifically "acknowledge[d] that the standard requiring control or direction for a finding of joint infringement may in some circumstances allow parties to enter into arms-length agreements to avoid infringement. Nonetheless, this concern does not outweigh concerns over expanding the rules governing direct infringement." *BMC Resources*, 498 F.3d at 1381.

> **2.     There Was Insufficient Evidence Presented at Trial on the Required "Control or Direction" by emsCharts over Softtech, or *Vice Versa*, to Support the Jury's Verdict on Joint Infringement of Claims 1, 6-8, 15, and 16-22 of the '073 Patent**

Independent claim 1, and thus dependent claims 6-8, of the '073 Patent are directed to dispatch and billing. Ex. A (PX 1) at cols. 20-21.[1] Independent claim 16, as well as dependent claims 16-22, are directed to dispatch and charting. Ex. A at cols. 21-22. There is no dispute that neither emsCharts nor the emsCharts.com software product dispatches. Thus, emsCharts cannot by itself infringe claims 1, 6-8, 15, and 16-22 of the '073 Patent. *See* Ex. B (Hutton Trial Tr. (11/20/08 AM)) at 154:5-155:6.[2] Nevertheless, at trial, Golden Hour argued that the combined actions of emsCharts and Softtech jointly infringe claims 1, 6-8, 15, and 16-22 of the '073 Patent. There is insufficient evidence, however, for a reasonable jury to have found that either emsCharts or Softtech exercised the requisite "control or direction" over the other that

---

[1]     Attached as Ex. A is a true and correct copy of the excerpts from PX 1 (the '073 patent), hereinafter referred to as "Ex. A."

[2]     Attached as Ex. B is a true and correct copy of the excerpts from the Trial Transcript of the morning session of 11/20/08, hereinafter referred to as "Ex. B."

4

would create the type of master-servant or vicarious liability relationship necessary to attribute each element of the respective claims to a single defendant.

There is uncontroverted evidence from Mr. Cromer of Softtech and Mr. Goutmann of emsCharts, as well as from Dr. Hutton and Mr. Mosteller of Golden Hour, that emsCharts and Softtech are independent companies. *See, e.g.,* Ex. C (Cromer Trial Tr. (11/24/08 AM)) at 78:23-79:11, 80:13-15;[3] Ex. D (Goutmann Trial Tr. (11/24/08 PM)) at 5:16-6:7, 6:21-7:22;[4] Ex. B at 156:3-13; Ex. E (Mosteller Trial Tr. (11/21/08 AM)) at 40:13-42:5.[5]

Moreover, there is insubstantial evidence in the record regarding the type of "control or direction" necessary for there to be joint infringement. Despite testifying that claims 1, 6-8, 15, and 16-22 of the '073 Patent are jointly infringed by emsCharts and Softtech (Ex. F, Ogle Trial Tr. (11/20/08 PM) at 91:2-8, 91:15-20)[6], Golden Hour's expert testified that he never investigated or reviewed evidence as to whether emsCharts and Softtech were controlled by one another and this was not his expertise. Ex. F at 126:7-25. Mr. Mosteller, Golden Hour's Vice President of Business Development, testified that neither emsCharts nor Softtech had control or direction over the other. Ex. E at 40:13-42:5. Mr. Mosteller's testimony is consistent with the testimony of both Mr. Cromer of Softtech and Mr. Goutmann of emsCharts. *See, e.g.,* Ex. C at 78:23-80:18; Ex. D at 5:16-7:22.

---

[3]    Attached as Ex. C is a true and correct copy of the excerpts from the Trial Transcript of the morning session of 11/24/08, hereinafter referred to as "Ex. C."

[4]    Attached as Ex. D is a true and correct copy of the excerpts from the Trial Transcript of the afternoon session of 11/24/08, hereinafter referred to as "Ex. D."

[5]    Attached as Ex. E is a true and correct copy of the excerpts from the Trial Transcript of the morning session of 11/21/08, hereinafter referred to as "Ex. E."

[6]    Attached as Ex. F is a true and correct copy of the excerpts from the Trial Transcript of the afternoon session of 11/20/08, hereinafter referred to as "Ex. F."

Softtech and emsCharts did have a non-exclusive distributor agreement that lasted for about a year.  Ex. G (PX 25);[7] Ex. C at 75:25-76:2; Ex. D at 8:5-9:7.  However, the distributor agreement defined the relationship as not creating or intending to create "any agency, partnership, joint venture, or employer/employee relationship."  Ex. G at EMSC 0015; *see also* Ex. C at 71:2-75:24, 76:14-20, 137:5-139:10; Ex. D at 3:11-5:15.  The distributor agreement itself stated that emsCharts was "receiving no rights in or to the [Flight Vector] Software under this Agreement other than the right to promote the Software to prospective end users pursuant to the Terms of this Agreement."  Ex. G at EMSC 0010.  Moreover, as Mr. Cromer testified, the distributor agreement in no way caused him to give up control of the Flight Vector program, its capabilities, development, or sales to anyone.  Ex. C at 70:22-75:24; 139:1-8.

After the distributor agreement had ended, emsCharts and Softtech did submit a Request for Proposal ("RFP") to Duke Life Flight and the University of Michigan.  But, again, emsCharts did not "control or direct" Softtech's performance with regard to the RFP process in the sense of a master-servant relationship or relationship that would impose vicarious liability.  Rather, Mr. Cromer determined the content of the portions of the RFP that he wanted to submit; he did not need any approval from emsCharts, and he did not have to, if he had not wanted to, submit any RFPs to these companies.  Ex. C at 135:18-136:8; Ex. D at 10:12-11:7.  In addition, the organizations issuing the RFPs knew that emsCharts and Softtech were separate and one was not the mastermind over the other.  *Cf.* Ex. C at 136:9-22 (testimony that requestors could select one part of the proposal and Flight Vector was not selected by Duke) *and* Ex. D at 11:8-21(testimony

---

[7]     Attached as Ex. G is a true and correct copy of the Distributor Agreement between Softtech and emsCharts (PX 25), hereinafter referred to as "Ex. G."

that Duke selected emsCharts for their medical records, but emsCharts had not heard until Mr. Cromer testified at trial that Flight Vector was not selected).

Importantly, at no time during the distributor agreement or after the termination of the distributor agreement did emsCharts ever control or direct, or have the power to control or direct, Softtech to:  (1) change the Flight Vector user manual; (2) add or delete any features to the Flight Vector program; (3) make any enhancements to the Flight Vector program; (4) directly sell the Flight Vector program; or (5) force Softtech to sell the Flight Vector program to a customer that Softtech did not want.  Ex. C at 79:12-80:6.  Nor did, or could, emsCharts dictate where, when, or to whom the Flight Vector program could be sold, or dictate that Flight Vector could only be sold in conjunction with the emsCharts.com program.  Ex. C at 80:7-12.  Similarly, Softtech did not have any control or direction over emsCharts' program.  Ex. C at 80:16-18.  Thus, emsCharts did not "control or direct" Softtech with regard to its Flight Vector dispatch program and Softtech did not "control or direct" emsCharts with regard to its emsCharts.com charting program, such that either emsCharts or Softtech could be vicariously liable for the other's actions.  *See BMC Resources,* 498 F.3d at 1379; *Emtel*, 583 F. Supp. 2d at 828-40.

Accordingly, there is insufficient evidence of record for a reasonable jury to have found the requisite "control or direction" existed for there to be joint infringement of claims 1, 6-8, 15, and 16-22 of the '073 Patent.  Similarly, the verdict is against the great weight of evidence that neither emsCharts nor Softtech had the requisite "control or direction" over the other for joint infringement to exist.

> **3.    There Was Insufficient Evidence Presented at Trial to Prove that emsCharts and Softtech Were the Direct Infringers of Claims 1, 6-8, 15, and 16-22 of the '073 Patent**

Joint infringement is a direct infringement theory.  As the Court instructed the jury in this case, "direct infringement requires a party to perform or use each and every step or element of a claimed method or product."  Ex. H (Jury Charge Trial Tr. (11/25/08 AM)) at 93:3-5[8] (emphasis added); *see also Muniauction*, 532 F.3d at 1329 (citing *BMC Resources*, 498 F.3d at 1380).

Independent claim 1 is directed to an "integrated . . . system" that dispatches and bills. Ex. A at col. 20.  Independent claim 15, which is a "method of generating a patient encounter record" requires "integrating the patient information with the flight information . . . ."  Ex. A at cols. 21-22.  It is undisputed that Flight Vector is a dispatch software and does not have the capability to do any type of billing, charting or diagnosis.  Ex. F at 28:24-29:18; Ex. D at 64:6-22.  Similarly, there is no dispute that the emsCharts.com program does not dispatch.  Ex. B at 154:5-155:6; Ex. C at 181:2-16.  Thus, for there to be an "integrated . . . system" and generation of a patient record by "integrating the patient information with the flight information" as argued by Golden Hour, the dispatch information from Flight Vector needs to be imported into the emsCharts.com program.  *See, e.g.,* Ex. F at 131:17-132:25; 134:10-25.  However, there is no evidence that either emsCharts or Softtech performs the import step themselves.  Thus, there is insufficient evidence that the Defendants in this case perform or use each and every step or element of a claimed method or product.

For this reason, there is insufficient evidence in the record for a reasonable jury to have found that emsCharts and Softtech jointly, and directly, infringe claims 1, 6-8, 15, and 16-22 of the '073 Patent.

---

[8]     Attached as Ex. H is a true and correct copy of the excerpts from the Jury Charge Trial Transcript of the morning session of 11/25/08, hereinafter referred to as "Ex. H."

**B.      Since emsCharts Has Not And Could Not Accurately Bill A Patient, There Is Insufficient Evidence To Support The Jury's Verdict That emsCharts Alone Directly Infringed Claims 10 And 12-14 Of The '073 Patent**

To prove infringement of claim 10, Golden Hour had to prove by a preponderance of the evidence that emsCharts' software meets every limitation of claim 10.[9]   Specifically, Golden Hour had to prove that emsCharts' software has (1) a first module that is capable of interpreting data relating to the medical condition of a patient involved in a patient incident, and (2) a second module that is capable of receiving that information from the first module and billing the patient appropriately for the patient incident.   Golden Hour failed to prove by a preponderance of the evidence that the emsCharts charting software has ever been used by any emergency medical service to generate an appropriate or accurate bill.   Moreover, Golden Hour failed to meet its evidentiary burden that the emsCharts software is even capable of billing a patient appropriately or accurately for a patient incident.

During the trial, the jury was provided with no evidence to show that any customer of emsCharts has ever used the emsCharts software to bill a patient.   Moreover, the jury was provided with substantial evidence to show that emsCharts' software is not capable of generating an appropriate (accurate) bill.[10]   In particular, Mr. Goutmann consistently testified that the emsCharts software program does not accurately bill a patient.   *See* Ex. D at 17:7-9.   There was also substantial testimony by Mr. Goutmann about the limited capability of the portions of the

---

[9]      *See, e.g., Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) ("It is . . . well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element . . . in the accused device."); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim . . . .").

[10]      Concerning an "appropriate" bill, the '073 Patent states that bills are to be submitted to the "appropriate party" in the "appropriate format."   *See* Ex. A at col. 3, lines 54-56.   As established at trial, emsCharts' software cannot generate a bill that:  (1) can be submitted to an "appropriate party"; <u>or</u> (2) is in an "appropriate format."

9

emsCharts software product that can include monetary information.   For example, Mr. Goutmann explained that emsCharts.com cannot take the pick-up location of a patient into account, which is a fairly standard item that can affect the accuracy of a bill for an emergency medical transport.   *Id.* at 20:19-21:13.   Mr. Goutmann also testified that the emsCharts.com product cannot take into account insurance rates that are often required to be considered during billing; cannot take into account contract requirements of a patient's insurance carrier or other third-party; cannot apply any discounted rate that might apply; cannot include any information for specialty procedures conducted during an emergency medical transport; cannot include charges for supplies used during a transport; and does not include any information that a patient would need to know concerning where to send payment for the charges incurred during a medical transport.   *See id.* at 22:4-24:21.   In addition, Mr. Goutmann testified that the emsCharts.com product cannot provide a bill in any of the unique formats required by insurance companies, and it does not include any information concerning the medical insurance codes that are needed to generate an accurate bill.  *See id.* at 26:11-33:2.

Moreover, Mr. Goutmann testified that he is not aware of any customer of emsCharts that uses the emsCharts.com program alone to bill.  And, in his many years of service as the founder and now the Vice President of emsCharts, Mr. Goutmann testified that he has never seen a bill created by the emsCharts.com program that was sent to a patient.  *See id.* at 33:11-16.  No one testified to the contrary.

Even Golden Hour's paid expert, Dr. Ogle, acknowledged that he has never seen a bill generated by the emsCharts program.  *See* Ex. F at 106:20-107:4.  Again, the only evidence adduced at trial regarding the generation of a bill by emsCharts related to a single page from the emsCharts User Manual.  *See id.* at 108:6-11, 113:4-20.  That single page of the User Manual

shows that if one generated a report using the emsCharts software, the report would not be appropriate (accurate) because it would not contain various pieces of information such as the information disclosed above (*e.g.*, contract amounts, discount amounts, insurance formatting information, medical codes, charges for specialty procedures, charges for supplies used during the transport, etc.) and would not even provide an address for a patient to remit payment.  Ex. D at 22:4-24:21.  Moreover, such a report from emsCharts would need to be reviewed and modified by a medical billing coder to confirm that it was accurate.  Any report generated by emsCharts cannot be an "appropriate" bill for all of these reasons and because it cannot be submitted to an "appropriate party" in an "appropriate format," as specified by the '073 Patent.  *See* Ex. A at col. 3, lines 54-56.

Finally, although emsCharts continues to believe that its product does not infringe the claims of the '073 Patent (because emsCharts does not control the actions of other parties and does not provide a product that can generate an accurate bill) and that the claims of the '073 Patent are invalid and unenforceable (at least in view of the prior art AMS System, which Golden Hour was aware of during prosecution of the '073 Patent), emsCharts has made various changes to its product to further clarify that the product cannot generate an appropriate bill.  Ex. I (Goutmann Decl.) at ¶¶ 2 & 3.[11]

Golden Hour has failed to prove by a preponderance of the evidence that emsCharts' software meets every limitation of claim 10 of the '073 Patent.  Because the emsCharts software does not meet every limitation of claim 10, it necessarily does not meet every limitation of

---

[11]       Since emsCharts changed its product to remove all pricing and Medicare code information, its has received no customer complaints and lost no business.  *See* Ex. I (Ex. F to emsCharts' Opposition to Plaintiff's Motion for Enhanced Damages, Doc. No. 240), Goutmann Decl. at ¶ 3.  This provides further support for emsCharts' position that its customers have not used its product to bill patients appropriately (accurately), as required by claims 10 and 12-14 of the '073 Patent.

claims 12-14, which depend directly from claim 10.  Therefore, emsCharts asks this Court for judgment as a matter of law that it does not infringe claims 10 and 12-14 of the '073 Patent.

### C. There Was Insufficient Evidence Presented At Trial Regarding A Direct Infringement By Another And That emsCharts Possessed The Requisite Specific Intent To Encourage Another's Infringement

#### 1. The Law of Inducement

Inducement requires "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Acco Brands, Inc. v. ABA Locks Mfg. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)).  Pursuant to the *en banc* portion of *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006), "[t]he 'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *DSU Medical*, 471 F.3d at 1305 (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003).  In other words, "the inducer must have an affirmative intent to cause direct infringement." *Id.* at 1306.

#### 2. Golden Hour Failed to Provide Sufficient Evidence As To a Direct Infringer

As discussed in section III.A.3, *supra*, neither emsCharts nor Softtech are direct infringers of claims 1, 6-8, 15, and 16-22 of the '073 Patent.  Additionally, as discussed in section III.B, *supra*, emsCharts does not directly infringe claims 10 and 12-14 of the '073 Patent.  Thus, for Golden Hour to prevail in its inducement claim, someone other than emsCharts and Softtech has to be the direct infringer.  However, there is insufficient evidence in the record with regard to a third party's activities of direct infringement.  Without such evidence, there is no

legally sufficient evidentiary basis for a reasonable jury to have found for Golden Hour on the issue of inducement.

### 3. Golden Hour Failed to Prove that emsCharts Had an Affirmative Intent to Induce Infringement by Another

As discussed in section III.D, *infra*, upon learning of the '073 Patent, Mr. Goutmann believed that its claims were directed to an integrated dispatch, charting, and billing program (the subject of claims 1, 6-8, 10, and 12-22 of the '073 Patent) and that such a program was known in the prior art through the public use, sale, and knowledge by others of the AeroMed Software System. Ex. C at 176:1-179:8. emsCharts has thus always believed that the claims of the '073 Patent were not infringed or were invalid. Therefore, emsCharts could not have had the requisite specific and affirmative intent to induce any party (whether itself, Softtech, or third party) to directly infringe the '073 Patent. Without proof of the requisite intent, there is no legally sufficient evidentiary basis for a reasonable jury to have found that emsCharts induced another's infringement.

### D. There Was Insufficient Evidence Presented At Trial To Satisfy The "Objective Recklessness" Standard Of Willfulness Established By The Federal Circuit In *In re Seagate*

emsCharts respectfully submits that the jury's verdict that emsCharts has willfully infringed the asserted claims of the '073 Patent is against the great weight of the evidence presented at trial.[12] Specifically, emsCharts submits that the jury's verdict is inconsistent with the "objective recklessness" standard for willfulness recently established by the Federal Circuit in *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

---

[12]     *See*, *e.g.*, *Smith v. Transworld*, 773 F.2d at 612-13.

13

The Federal Circuit in *Seagate* overruled the "duty of care" standard previously established under *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983) (which placed an affirmative duty on a potential infringer to exercise due care to determine whether or not he was infringing upon notice of another's patent rights), and held that proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness. *See Seagate*, 497 F.3d at 1371. Further, when the Federal Circuit abandoned the affirmative duty of care standard, it also reemphasized that there is no affirmative obligation to obtain an opinion of counsel. *Id.*

The trial record shows that when Golden Hour sent its letter about the '073 Patent to the Center for Emergency Medicine ("CEM") in October of 2003, Mr. Peter Goutmann was asked by senior management at CEM to consult with corporate and patent counsel and formulate an informal opinion whether the claims of the '073 Patent were infringed or were invalid. *See* Ex. C at 176:17-179:8 (where Mr. Goutmann testified that he, Mr. Bothwell and Dr. Paris met with corporate and patent counsel in at least two separate meetings, evaluated the '073 Patent and decided to go ahead with the development of emsCharts). Mr. Goutmann concluded and reported to senior management at CEM that the claims of the '073 Patent were invalid over the prior art, including at least the AMS system. Ex. C at 178:18-179:3. Mr. Goutmann and the management personnel he consulted with are persons of ordinary skill in the field (having both technical and hands-on experience with emergency medical transport programs like the prior art AMS System). Even under the more strict "duty of care" standard of *Underwater Devices*, the Federal Circuit has held that an opinion of noninfringement or invalidity from a non-attorney

having technical training or education in the relevant field is sufficient to avoid a finding of willfulness.[13]

Since the Federal Circuit's decision in *Seagate*, there have been very few cases where courts have found a defendant to have acted with "objective recklessness." *See*, *e.g.*, *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1380-81 (Fed. Cir. 2008) (finding fairly clear evidence of deliberate copying). Indeed, in several decisions after *Seagate*, the Federal Circuit and this Court have reversed jury verdicts of willful infringement.[14]

Golden Hour has made much of the fact that emsCharts did not provide a written opinion of counsel regarding the '073 Patent. It is now well-established that there is no formal obligation to obtain any opinion of counsel, written or unwritten. *See Seagate*, 487 F.3d at 1371.[15] In this case, however, upon CEM's receipt of Golden Hour's letter in 2003, Mr. Goutmann and senior management personnel spent a significant period of time evaluating the '073 Patent. *See* Ex. C at 176:16-179:8 The result of this investigation was a decision by Mr. Goutmann's superiors at CEM to continue commercializing the emsCharts product. *See, e.g.*, Ex. K (PX 5)[16] (confirming

---

[13] *See, e.g., Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1355-56 (Fed. Cir. 2001) (finding that a defendant's reliance on the technologic expertise and reputation of their non-attorney advisor was sufficient to avoid a finding of willfulness).

[14] *See, e.g., Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1381 (Fed. Cir. 2008) (affirming district court's grant of JMOL of no willful infringement); *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp.2d 561, 579 (E.D. Tex. 2007) (granting defendant's JMOL on willfulness on the basis that its invalidity defense was not objectively unreasonable); *Medtronic Vascular, Inc. v. Boston Scientific Corp.*, No. 2:06-CV-78(TJW), Doc. No. 206 (E.D. Tx. May 21, 2008) (Minute Order indicating that "willfulness is out" after hearing JMOL arguments) (a true and correct copy of the Minute Order is attached hereto as Ex. J).

[15] The Federal Circuit found, under the stricter "duty of care" standard established by *Underwater Devices*, that an opinion of a non-attorney with technical experience in the field is sufficient to avoid a finding of willfulness. *See Biotec*, 249 F.3d at 1355-56.

[16] Attached as Ex. K is a true and correct copy of PX 5 (a letter dated October 24, 2003 from Kevin Hutton to James Bothwell), hereinafter referred to as "Ex. K."

15

that Dr. Paris communicated this to Dr. Hutton of Golden Hour).   Mr. Goutmann and his colleagues did not believe that the '073 Patent was infringed by the emsCharts.com system nor valid under the prior art.

Dr. Hutton of Golden Hour admitted that he was told by Dr. Paris of CEM that an investigation of the patent had been conducted and that "there was no infringement."   *See* Ex. B at 132:8-13, 132:23-133:3.   Dr. Hutton acknowledged in his October 24, 2003, letter to Mr. Bothwell that Dr. Paris had informed him that CEM had performed a "comprehensive intellectual property analysis of Golden Hour's technology, and there was no overlap with [Golden Hour's] intellectual property."   Ex. K.   Accordingly, Dr. Hutton provided written evidence that corroborates Mr. Goutmann's testimony that CEM (not just Mr. Goutmann himself) performed a "comprehensive intellectual property analysis," which led to a conclusion that there was no infringement of the '073 Patent (*i.e*., "no overlap" with Golden Hour's intellectual property).   Ex. K; Ex. B at 134:22-135:21.

Dr. Hutton also testified that he believes the emsCharts product does not infringe at least the claims of the '073 Patent that require dispatching because the emsCharts product does not dispatch.   Ex. B at 155:13-23.   Also, on the subject of joint infringement, Dr. Hutton testified that Softtech is an "independent company" from emsCharts.   *Id.* at 156:11-13.

Thus, the weight of the evidence is overwhelming that emsCharts had a good-faith belief that the '073 Patent was not infringed and invalid.   Golden Hour's repeated reliance on alleged statements that emsCharts "disregarded" the patent after conducting its evaluation actually reinforces that emsCharts believed in good faith that its product did not infringe and that the '073 Patent claims were invalid.   emsCharts was well aware of the AMS System, which Mr. Charles Freeman testified included all the features of the asserted claims and was made, used, sold (to

nearly half of the emergency medical transport industry)and offered for sale nationwide more than a year before Golden Hour filed the application that issued as the '073 Patent.   Ex. L (Freeman Trial Transcript 11/21/08 PM)[17] at 73:18-74:19, 93:9-98:25.   In addition, Mr. Goutmann had personal knowledge of the AMS System's capabilities after having personally used the system during his employment at the CEM.   Ex. C at 150:12 - 152:6.   Mr. Goutmann never thought years later to visit an issue he believed was settled.   Ex. D at 66:2-13.

Considering all of this evidence together and the fact that a significant, comprehensive review of the '073 Patent was undertaken by Mr. Goutmann and others at CEM after consultation with corporate and patent counsel, emsCharts had and continues to have a good-faith belief that the '073 Patent is not infringed, invalid, or unenforceable.[18]   Accordingly, there was insufficient evidence for a reasonable jury to have found willful infringement.   The jury's verdict of willful infringement is clearly against the great weight of evidence presented at trial.   As a result, the Court should grant emsCharts' motion for JMOL or, in the alternative, for a new trial on the subject of willfulness.

---

[17]     Attached as Ex. L is a true and correct copy of the excerpts from the Trial Transcript of the afternoon session of 11/21/08, hereinafter referred to as "Ex. L."

[18]     In August of 2008, the Federal Circuit held that a defendant's reliance on an oral opinion from its counsel that, despite a jury verdict to the contrary, the accused product did not infringe the claims and that defendant should receive a favorable outcome in view of the renewed motion for JMOL then pending was sufficient to support a finding that the defendant had not acted objectively reckless by liquidating its remaining inventory of the accused devices.   *See Lexicon Medical, LLC v. Northgate Tech., Inc.*, Nos. 2007-1420 & 2007-1440, 2008 U.S. App. LEXIS 18825 at *20-*21 (Fed. Cir. 2008).   Similarly, emsCharts formed at least an informal opinion of noninfringement and/or invalidity (based on comprehensive investigation conducted in connection with consultation with patent counsel) upon receipt of Golden Hour's notice letter; at the time Golden Hour filed its suit; and after the jury's verdict at trial that the accused product of emsCharts does not infringe the asserted claims of the '073 Patent; that the asserted claims of the '073 Patent are invalid over the prior art (including the AeroMed Software System); and/or that the '073 Patent is unenforceable as a result of Golden Hour and its counsel's inequitable conduct (including failing to inform the Patent Office of their knowledge of the prior art AeroMed Software System in the patent application and withholding materials about the system from the Patent Office during prosecution of the '073 Patent).

**III.     CONCLUSION**

For the reasons stated, emsCharts respectfully requests that the Court grant its motion for judgment as a matter of law or, in the alternative, for new trial on the issues of infringement and willfulness.

Dated:  February 4, 2009                    McKOOL SMITH, P.C.

By:/s/ Sam Baxter
                    Sam Baxter, Lead Attorney
                    State Bar No. 01938000
                    P.O. Box 0
                    104 East Houston, Suite 300
                    Marshall, TX 75670
                    Telephone: (903) 923-9000
                    Facsimile: (903) 923-9099
                    sbaxter@mckoolsmith.com

                    Theodore Stevenson, III
                    Texas State Bar No. 19196650
                    tstevenson@mckoolsmith.com
                    M. Jill Bindler
                    Texas State Bar No. 02319600
                    jbindler@mckoolsmith.com
                    McKool Smith P.C.
                    300 Crescent Court, Suite 1500
                    Dallas, Texas 75201
                    Telephone: (214) 978-4000
                    Telecopier: (214) 978-4044

Of Counsel:
Eric H. Weisblatt
eric.weisblatt@bipc.com
Susan Dadio
susan.dadio@bipc.com
Barbara Walker
barbara.walker@bipc.com
Martin Bruehs
martin.breuhs@bipc.com
Buchanan Ingersoll & Rooney PC
1737 King Street, Suite 500
Alexandria, VA 22314
Telephone: (703) 836-6620
Telecopier: (703) 836-2021


S. Manoj Jegasothy
Buchanan Ingersoll & Rooney PC
301 Grant Street , 20th Floor
Pittsburgh, PA 15219-1410
Telephone: (412) 562-8800
Telecopier: (412) 562-1041
manoj.jegasothy@bipc.com
**ATTORNEYS FOR DEFENDANT AND
COUNTERCLAIMANT EMSCHARTS, INC.**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of DEFENDANT EMSCHARTS, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL ON THE ISSUES OF INFRINGEMENT AND WILLFULNESS on February 4, 2009, via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Sam Baxter
Sam Baxter