**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GOLDEN HOUR DATA SYSTEMS, INC., § § Plaintiffs, § § v. § § EMSCHARTS, INC., ET AL., § § Defendants. § | CIVIL ACTION NO. 2:06 CV 381 |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

In this case, plaintiff Golden hour Data Systems Inc. ("Golden Hour") obtained a jury verdict of infringement against defendants emsCharts Inc. and Softtech LLC (collectively "Defendants") with respect to United States Patent No. 6,117,073 ("the '073 patent). *See* Dkt. No. 202 (Jury Verdict). The jury found Golden Hour and Softtech were liable for jointly infringing claims 1, 6-8, and 15-22 of the '073 patent. EmsCharts moved for Judgment as a Matter of Law on several issues. (Dkt. No. 250)  The court now addresses Paragraph (i) of emsCharts' Motion.

**II.   FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

Plaintiff Golden Hour Data Systems, Inc. ("Golden Hour") accuses emsCharts, Inc. and Softtech, LLC (collectively, "Defendants") of infringing claims 1, 6-8, 10 and 12-22 of United States Patent No. 6,117,073 ("the '073 patent"). Claims 1, 10 and 15 are independent claims. Claims 1, 6-8, 10 and 12-14 are apparatus claims, whereas claims 15-22 are method claims.

The '073 patent is directed to an integrated medical database for use in the emergency medical transportation industry. The final sentence in the Background of the Invention section

summarizes the basic concept of the invention: "what is needed is a comprehensive system that includes modules for dispatching emergency medical teams, tracking their movement to and from the accident scene, managing a clinical diagnosis and treatment and accurately billing the patient for the services rendered." '073 Patent at 1:66-2:3. The abstract of the patent states:

> An integrated medical database system for the emergency medical transportation business is disclosed. The system includes a dispatch module, clinical module, administration module and billing module. Each module may communicate data with one or more of the other modules to form a system incorporating data sharing, thus achieving an end-to-end automation of emergency medical care accounting. Internal consistency checks are performed by the system to ensure that proper treatments are performed according to a chosen diagnosis.

Claims 1 and 15 are reproduced below:

> 1. A computerized integrated data management system for tracking a patient incident, comprising:
>    a first module capable of dispatching an emergency transport crew specific to a patient incident requiring emergency medical care by the emergency transport crew, wherein transportation tracking information relating to the dispatch is recorded; and
>    a second module capable of receiving information from the first module and billing the patient appropriately for costs indicative of the patient incident, including transportation costs.

'073 Patent at 20:61-21:4.

> 15. A computerized method of generating a patient encounter record, comprising the steps of:
>    collecting flight information relating to an emergency transport crew dispatch;
>    collecting patient information from a clinical encounter associated with a patient incident requiring emergency medical care by the emergency transport crew;
>    and integrating the patient information with the flight information to produce an encounter record indicative of the patient's clinical encounter.

'073 Patent at 21:54-22:6

Golden Hour accused emsCharts of directly infringing claims 10, 12, 13, and 14 of the '073 patent by making, using, offering to sell, and selling its emsCharts.com system. Golden

Hour also accused emsCharts and Softtech of jointly infringing claims 1, 6, 7, 8, and 15-22.

This Order addresses the issues raised in Paragraph (i) of emsCharts' Motion for JMOL (Dkt. No. 250): whether "there is insufficient evidence for a reasonable jury to have found that Golden Hour Data Systems Inc. ("Golden Hour") proved the requisite 'control or direction' was exercised by emsCharts over Softtech, LLC ("Softtech"), or *vice versa*, for there to be joint infringement, and that emsCharts and Softtech were liable for directly infringing claims 1, 6-8, 15, and 16-22 of U.S. Patent No. 6,117,073 ("the '073 Patent")."

### III. LEGAL PRINCIPLES

Pursuant to Federal Rule of Civil Procedure 50(a), the court "may only render judgment as a matter of law where 'the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Palasota v. Haggar Clothing, Co.*, 499 F.3d 474, 480 (5th Cir. 2007) (citing Fed. R. Civ. P. 50(a)). "In entertaining a Rule 50 motion for judgment as a matter of law [the court] must review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and may not make determinations or weigh the evidence." *Id.* (citing *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000)). The court must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* (citing *Ellis*, 258 F.3d at 337).

### IV. DISCUSSION

EmsCharts seeks judgment as a matter of law with respect to the jury's verdict finding

joint infringement of Golden Hour's patent. Question number 2 of the verdict form asked the jury: "Do you find by a preponderance of the evidence that emsCharts, Inc. and Softtech, LLC jointly infringe the following asserted claims of the '073 patent? Answer 'Yes' or 'No' for each asserted claim . . ." The jury answered "yes" to all of the claims asserted, which include 1, 6, 7, 8, 15, 16, 17, 18, 19, 20, 21, and 22. Claim one is an independent claim from which 6-8 depend. Claim 15 is an independent claim from which 16-22 depend. EmsCharts argues there was insufficient evidence presented at trial to prove the requisite "control" or "direction" needed to find joint infringement of any of the asserted claims.

Independent claim 1, and thus dependent claims 6-8 of the '073 Patent require both dispatch and billing. [ 20:61-21:4] Claim 15, likewise, is a method claim that requires integration of patient information with flight information. There is no dispute that neither emsCharts nor the emsCharts.com software product dispatches. Softtech's Flight Vector system, however, dispatches. Golden Hour argued at trial that the two together jointly infringed its patent.

It is well settled law that infringement requires a showing that a defendant has practiced each and every element of the claimed invention. *Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520 U.S. 17, 40 (1997). The "traditional standard "requir[es] a single party" to practice each and every element for there to be infringement. *BMC Resources, Inc. v. Paymentech, L.P.* 498 F.3d 1373, 1380 (Fed. Cir. 2007). "A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity. In those cases, the party in control would be liable for direct infringement." *Id.* at 1381. Therefore, to prove joint infringement, the patent holder must prove that "one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e. 'the mastermind.'" *MuniAuction,*

*Inc. v. Thomson Corp.* 532 F.3d 1318 (Fed. Cir. 2008) (quoting *BMC Resources*, 498 F.3d at 1380-81). "[T]he control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by the other party that are required to complete performance of a claimed method." *BMC Resources*, 498 F.3d at 1379.

The Federal Circuit insisted that the direction or control standard does not "provide a loophole for a party to escape infringement by having a third party carry out one or more of the claimed steps on its behalf." *Id.* However, the court "acknowledge[d] that the standard requiring control or direction for a finding of joint infringement may in some circumstances allow parties to enter arms-length agreements to avoid infringement." *BMC Resources* 498 F.3d at 1381. That concern, however, did not warrant expanding the rules governing joint infringement. *Id.* Additionally, those concerns "can usually be offset by proper claim drafting. A patentee can usually structure a claim to capture infringement by a single party." *Id.*

As an initial matter, emsCharts points to several pieces of evidence in the record that prove emsCharts and Softtech are two separate companies. [11/24/08 AM Trial Tr. 78:23-79:11, 80:13-15; 11/24/08 PM Trial Tr. 5:16-6:7, 6:21-7:22; 11/21/08 AM Trial Tr. 40:13-42:5] Therefore, one of the companies needed to control or direct the other for their to be joint infringement. *See BMC Resources,* 498 F.3d at 1380. The evidence at trial showed that Softtech and emsCharts had a non-exclusive distributorship agreement that lasted about a year. The agreement defined the relationship as not creating "any agency, partnership, joint venture, or employer/employee relationship." The agreement stated that emsCharts was "receiving no rights in or to the [Flight Vector] Software under the Agreement other than the right to promote the

5

Software to prospective end users pursuant to the Terms of this Agreement." Softtech testified that the agreement in no way caused it to give up control of the Flight Vector program. [11/24/08 AM Tr. Transcript 70:22-75:24]

Golden Hour argues this is not dispositive of the issue of control or direction. Golden Hour points to evidence in the record that shows emsCharts was paid directly by a customer for the Flight Vector software. PX 32. Additionally Golden Hour points to a University of Michigan Request for Proposal ("RFP") in which emsCharts and Softtech jointly submitted a bid. Golden Hour characterizes emails from emsCharts to Scot Cromer of Softtech as "directing" him to complete specific portions of the RFP and provide pricing. *See* PX 85. However, a prior email from emsCharts to Softtech *asked* "[a]re we planning to propose a joint Flight Vector/emsCharts solution?" PX83 Therefore, looking at the string of conversations about the joint RFP shows that emsCharts did not *direct* Softtech submit the bid. The two companies discussed and *agreed* to submit the bid.

Golden Hour also points to additional evidence in the record that, it argues, could have lead the jury to find that emsCharts controlled or directed Softtech. For example, Golden Hour points to evidence of emsCharts making a sale on behalf of Softtech (PX32 & PX 32), communications from emsCharts to Softtech urging it to stay diligent on closing sales (PX37), joint sales and information sessions (PX77), and joint price quotes (PX41). None of this evidence, however, is legally sufficient to show emsCharts controlled or directed Softtech. "Making information available to the [other] party, prompting the [other] party, instructing the [other] party, or facilitating or arranging for the [other] party's involvement in the alleged infringement is not sufficient [to find control or direction]." *Emtel, Inc. v. Lipidlabs, Inc.* 583

F.Supp.2d 811, 839 (S.D. Tex. 2008) (collecting and analyzing district court cases applying *BMC Resources* and *Muniauction*).

In its attempt to identify a legal theory supporting that there was some agency relationship between the parties, Golden Hour points to Softtech's cross claim against Golden Hour that was dismissed before trial. Softtech's cross claim included allegations that emsCharts breached the Distributor Agreement by intentionally infringing Golden Hour's patent. Softtech accused emsCharts of breach of fiduciary duty because Softtech believed that emsCharts owed it a duty of loyalty and candor. Golden Hour argues this was evidence the jury could rely on to find more than a mere arms-length transaction between the parties. However, this is not evidence of any actual direction or control. The fact that Softtech at one time had a claim against emsCharts for what it thought was a breach of some fiduciary duty is not sufficient to show that there was one.

Golden Hour has not provided evidence sufficient to find that emsCharts had any control or direction over Softtech, or *vice versa*. In fact, the distributorship agreement between the parties expressly stated that there was no rights to Softtech other than the rights to promote its product. *See Emtel,* 583 F.Supp.2d at 835 (discussing when contracts impose some control or direction). Under a contract, a party may be both an agent and an independent contractor. A party "who contracts to act on behalf of another and [is] subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor." RESTATEMENT (SECOND) AGENCY § 14N (1958).[1] A contracting party is not vicariously liable for an independent contractor unless that party controls the details of the independent

---

[1] *BMC Resources* cited with approval RESTATEMENT (SECOND) OF AGENCY § 220. *BMC Resources* 438 F.3d at 1379.

contractor's work to such an extent that the contractor cannot perform the work as he chooses." *Emtel* 583 F.Supp.2d at 840 (citing *Indian Harbor Ins. Co. V. Valley Forge Ins. Group*, 535 F.3d 359, 364-65 (5th Cir. 2008)).  There was no evidence at trial to show that the Distributorship Agreement imposed the types of duties or responsibilities upon Softtech that would support a finding of direction or control by emsCharts.  Indeed, there is no evidence in the record to support a finding of such control or direction.

## V.     CONCLUSION

For the foregoing reasons, the court GRANTS emsCharts JMOL Paragraph (i).  The court concludes there is no legally sufficient evidentiary basis to find that emsCharts and Softtech jointly infringe claims 1, 6-8, 10 and 12-22 of the '073 patent.

SIGNED this  3rd  day of April, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE